**Gary N. TODD, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 1, 1974.

As Modified on Denial of Rehearing
May 3, 1974.

Thomas D. Shumate, Shumate, Shumate & Flaherty, Richmond, for appellant.

Ed W. Hancock, Atty. Gen., Robert L. Chenoweth, Asst. Atty. Gen., Frankfort, for appellee.

CATINNA, Commissioner.

Gary N. Todd was indicted for the offense of murder and convicted by a jury of voluntary manslaughter with his punishment being fixed at three years' imprisonment.

Todd contends that the judgment should be reversed because (1) the trial court admitted hearsay evidence of a highly prejudicial nature, and (2) the court should have granted his motion for a directed verdict.

At about 10 p. m. on February 23, 1973, Alex Combs, Joyce Church, and Nancy Conley went to Todd's apartment which he occupied in Berea. They visited until approximately 1 a. m., during which time they consumed a pint of bourbon and danced. There is some evidence that Todd and Nancy engaged in some slight argument.

Todd testified that just a few minutes after the parties had left, Nancy returned and asked if he would permit her to stay in the apartment for a short while as Alex and Joyce wanted to be alone. He granted her permission to do so, showed her how to lock the door when she left, and then went to bed and fell asleep. At about 3:15 a. m., he was aroused by someone shaking him and, in what he claimed was a half-awake and terrified condition, he picked up a pistol he had on the bed and shot. The bullet that killed Nancy passed through her eye and head, .richocheted off a picture frame on the wall, and broke an electric light bulb which was hanging down from the ceiling in the bedroom. Todd immediately called an ambulance. Nancy was found lying on the floor beside the bed, fully clothed, except for her shoes which

were found under a coffee table in the living room.

■ Upon the trial Alex Combs and Joyce Church testified that they left Todd's apartment first and got into the car and waited for Nancy to come out. Joyce testified that when Nancy came out "she came over and said that she was going to stay if that was all right." Alex Combs testified that "she came out and told us that Gary had asked her to stay." Combs did not see Nancy reenter the apartment; however, Joyce testified that she saw her go back through the door. Todd claims that this evidence was not only hearsay but highly prejudicial. The statements to which both Joyce and Alex testified did nothing more than illustrate her intention or purpose in returning to the apartment. From the declared intent to do a particular thing, in this case stay at the apartment, an inference that the thing was done may be fairly drawn. Such declarations have been deemed admissible where they possess a high degree of trustworthiness, where they are relevant to an issue in the case, and the declarant is dead or otherwise unavailable, in which case the necessity for their admission has been recognized. The admission of such evidence is clearly an exception to the hearsay rule. Cf. People v. Alcalde, 24 Cal.2d 177, 148 P.2d 627 (1944).

29 Am.Jur.2d, Evidence, Section 651, page 702, states:

"Where the intent with which a party performed an act is a disputed fact in a case or a material element of such a fact, declarations made by the party after, as well as before, such act, that indicate the intent with which he performed it, are admissible in evidence as an exception to the hearsay rule. However, such a declaration of intent is not admissible in the absence of proof of performance of the act to which it relates, * * * *."

The statement of Nancy that she was going to stay was nothing other than a statement of intent, and the fact that she reentered the apartment was proof that she carried out her statement of intent. In view of the circumstances surrounding her reentry, the statements testified to by Joyce and Alex were admissible and the court did not commit error in so admitting them.

■ Todd next contends that the court should have directed a verdict because there was not enough evidence to take the case to the jury. The violent killing of one person by another who relies upon justification ordinarily will support a verdict of homicide despite the defendant's exculpatory evidence, which therefore must, as a practical matter, be sufficient either to convince the jury or to raise in the minds of the jurors a reasonable doubt. Certainly the jury is not required to accept his self-serving explanation.

The judgment is affirmed.

All concur.